In re the Marriage of: Evelyn M. Mack,
Petitioner–Appellant and Cross-Respondent,

v.

James D. Mack, Respondent and Cross-Appellant.

Court of Appeals

*No. 81–1596. Submitted on briefs March 26, 1982.—
Decided July 20, 1982.*
(Also reported in 323 N.W.2d 153.)

For the appellant the cause was submitted on the briefs of *Bittner, Hinkfuss & Sickel* and *Robert L. Bittner* of Green Bay.

For the respondent the cause was submitted on the brief of *Herrling, Clark, Hartzheim & Siddall, Ltd.*, and *Charles D. Koehler* of Appleton.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.  Evelyn Mack and James Mack appeal the property division provisions of the judgment granting their divorce. The parties disagree on whether an insurance settlement paid for personal injury to James and the vested interest of James in his federal employee retirement fund should be considered marital property. The trial court concluded that neither of these assets were marital property, but awarded $10,000 of the insurance settlement to Evelyn Mack after concluding that this amount would compensate for her loss resulting from the injury to James. We conclude the settlement is marital property, which, because of its source, was properly awarded predominantly to James. Because the present value of the assets purchased with the settlement, rather than the original settlement amount, should be divided and because pension benefits should be considered, we reverse and remand for division of those assets.

James and Evelyn were married on January 25, 1964, and separated on August 21, 1979. Their divorce was entered on July 29, 1981. Their children, born in 1964 and 1965, reside with Evelyn.

In June, 1975, James suffered severe injuries to his left leg in a motorcycle accident. He was hospitalized for two months, had extensive surgery, and had some loss of work. His automobile insurer paid $28,176 for medical expenses, wage loss, and pain and suffering up to the date of a final settlement in March, 1978, and $100,000 for all future claims. The final settlement included $1,000 for damage to his motorcycle. The settlement was paid in March, 1978, in the form of a check issued to both parties and bars future claims by either of them. No

lawsuit had been filed. The proceeds of the settlement were commingled in joint accounts and used for joint purposes; namely, the purchase of a cottage, a Corvette automobile, a video recorder, and to pay off a two-year-old automobile owned by the parties. There was testimony that part of the money was used to paint the parties' home.

The only issues on appeal relate to the division of property. Section 767.255, Stats., creates a presumption that property is to be divided equally, but the court can consider other factors it determines relevant and alter the division accordingly. Matters concerning property division are within the discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion can be shown. *Dean v. Dean*, 87 Wis. 2d 854, 877, 275 N.W.2d 902, 912 (1979). We need not, however, defer to the trial court on the questions of law presented.

## PERSONAL INJURY SETTLEMENT

Evelyn argues that the personal injury settlement is marital property, citing *Nixon v. Nixon*, 525 S.W.2d 835 (Mo. App. 1975). *Nixon* involved the settlement of a lawsuit in which only the husband was the plaintiff. The net settlement was placed in a separate account in the husband's name. Under the statutory definition applicable in Missouri, the court held the settlement and all increases in its value to be marital property. Missouri's broad definition of marital property, "all property acquired by either spouse subsequent to the marriage" with five exceptions not applicable to this case, is not binding in Wisconsin.

Our own statute, sec. 767.255, Stats., however, is also quite broad. It excepts "any property shown to have been

acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired" from a property division under the statute, except upon the finding that refusal to divide such property would create a hardship. In that event, the court is given discretion to divest the party of such property in a fair and equitable manner. The statute directs the court to presume that all other property is to be divided equally between the parties, but allows the court to consider relevant factors in deciding whether to follow the presumption or make some other equitable distribution of the property. Evelyn argues that since the settlement was not a gift, bequest, devise, or inheritance, it must be a divisible asset. We agree.

Our supreme court has determined that the present value of a veteran's disability pension is not an asset of the marriage to be divided between the parties. *Leighton v. Leighton*, 81 Wis. 2d 620, 636, 261 N.W.2d 457, 464–65 (1978). Unlike the pension in *Leighton*, however, the lump sum settlement was not only to compensate James for impairment of his body, but to completely satisfy any claims of James and Evelyn that may have arisen out of James's injury. In addition, the settlement was received more than a year before the parties separated. It was placed in joint accounts and used to purchase other joint assets. Had James come into the marriage with $100,000, this would have been a factor to consider when dividing it, but would make it no less marital property under the statute. For this reason, we conclude that it is appropriate to treat the settlement as marital property, but to give the greatest share of it to James.

Among the relevant factors listed in the statutes are the property brought to the marriage by each party, sec.

767.255 (2), Stats., and the contribution of each party to the marriage, sec. 767.255 (3), Stats. The court properly awarded a greater share of the settlement to James, in view of its source. Because of the continuing effect of the injury to James, this is an appropriate case to alter the apportionment from the presumed equal division.

The effect of receiving the greater part of the settlement is to increase the amount of income that James will earn over his lifetime, an increase not unbalanced by the pain, suffering, humiliation, and loss of enjoyment of life suffered by James. It was also considered by the court insofar as it increases the income available to James for purposes of maintenance and support. This does not violate the prohibition against considering an asset both as marital property and as a factor in the party's future income. *See Kronforst v. Kronforst,* 21 Wis. 2d 54, 64, 123 N.W.2d 528, 534 (1963). The increase in income is the result of the earnings of the asset and is not the awarded amount itself. The trial court is directed to make this clear on remand.

In his cross-appeal, James contends the court improperly divided $100,000 in settlement proceeds when, due to spending by the parties and depreciation of the property purchased, a lesser amount remained. The trial court is directed to consider the value of the property purchased with the settlement as it existed at the time of the divorce.

## CIVIL SERVICE RETIREMENT ACCOUNT

The parties' other dispute is over the pension benefits of each party. The value of James's vested interest in the federal retirement plan was given but not considered as an asset in dividing the marital property. The value

of Evelyn's unvested interest was initially not reported and was finally not divided between the parties. Wisconsin recognizes that pension rights should be considered when dividing the assets of the marriage. *Leighton,* 81 Wis. 2d at 634–36, 261 NW2d at 463–64; *Pinkowski v. Pinkowski,* 67 Wis. 2d 176, 179–80, 226 N.W.2d 518, 520 (1975). *Schafer v. Schafer,* 3 Wis. 2d 166, 170–71, 87 N.W.2d 805, 806 (1958). In *Leighton,* the court held that it was error for the trial court to fail to take into account the husband's interest in a teacher's retirement plan either in the property division or in the alimony award:

> This is not to hold that an interest in a pension plan, vested or unvested, is to be treated the same as other physical assets of the parties. There can be no set rule, and the only rule, as one court has phrased it, is that the trial court '. . . must consider all the circumstances and evaluate the probability that the party who has a contingent right to a pension will eventually enjoy that pension.' Thus it would continue to be the rule that it is not error to exclude an interest in a pension fund from the division of estate if it is considered as income in awarding alimony. Furthermore, the rule that the trial court must consider both vested and unvested interests in a pension plan, either in the division of property or in the award of alimony, jibes with the cases in our state holding that the employee's interest in a pension plan, even one that is noncontributory on his part, is not a mere gratuity or expectancy, but an enforceable contract right. Thus it was reversible error for the trial court to have failed to take into account the defendant's interest in the teachers' retirement plan either in the property division or the alimony award.

*Leighton,* 81 Wis. 2d at 634–35, 261 N.W.2d at 464 [footnotes omitted].

James argues, however, that his federal pension is in lieu of social security and not a divisible asset of the

marriage. James argues that none of the cases cited by Evelyn deal with federal civil service retirement pensions. We note, however, that Evelyn cited *Schafer*, in which the court affirmed the division of retirement benefits of a federal postal employee. Although the level of contribution by an employee to the federal pension plan is approximately the same as that of a nonfederal employee to social security, the plans are not otherwise equivalent.[1] Social security provides for apportionment of some of the retiree's benefits to his former spouse,[2] preempting division by state courts.[3] Civil service retirement benefits are also governed by federal law, but Congress has expressed an intent not to preempt the divisibility of these assets. Congress in 1978 specifically added a provision to the civil service retirement laws concerning retirement payments as marital property:

---

[1] Although an employee's social security account increases in relative value over his working life, social security is not a property like a pension. It is a system of social insurance. "To engraft upon the social security system a concept of accrued property rights would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands." *Flemming v. Nestor*, 363 U.S. 609, 610 (1960).

[2] *See* 42 U.S.C.A. § 402(b) (West Supp. 1982).

[3] The Supreme Court has followed the preemption rationale to declare the indivisibility of military pensions, *McCarty v. McCarty*, 453 U.S. 210 (1981), and pensions under the Railroad Retirement Act. *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979). The Court reasoned that military and railroad pensions are controlled by federal statute. The intent expressed by Congress is that these assets belong solely to the employee and not to the marriage. Washington has concluded that social security benefits are likewise not community property. *Larango v. Larango*, 610 P.2d 907 (Wash. 1980). Social security is usually left to the respective spouses without comment.

The congressional intent argument does not support this theory with respect to federal civil service pensions. Congress has expressly permitted them to be divided in accordance with state law. *See* 5 U.S.C.A. § 8345(j)(1) (West 1980).

Payments under this subchapter which would otherwise be made to an employee, Member, or annuitant based upon his service shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment or legal separation. Any payment under this paragraph to a person bars recovery by any other person.

5 U.S.C.A. § 8345(j)(1) (West 1980).[4] Thus, although it is true that James is not covered by social security in addition to his federal retirement plan, it was still error for the court to exclude the value of his federal employee retirement benefits in dividing the property of the parties where it did not consider this value in awarding alimony.[5]

---

[4] The statute does not, however, mandate the inclusion of federal pensions in the marital estate. "The legislative history [of 5 U.S.C.A. § 8345(j)(1)] . . . makes it clear that the purpose of that statute was to permit federal cooperation with state law and court orders, and to remove federal preemption from the area. . . . *See* S. Rep. No. 95–1084, 95th Cong., 2d Sess., *reprinted in* [1978] U.S. Code Cong. & Admin. News p. 1379." *Witcig v. Witcig*, 292 N.W.2d 788, 794 (Neb. 1980).

[5] *Accord Monsma v. Monsma*, 618 P.2d 559 (Alaska 1980); *Malone v. Malone*, 587 P.2d 1167 (Alaska 1978); *Marriage of Laster*, 643 P.2d 597 (Montana 1982). *But see Witcig v. Witcig*, 292 N.W.2d 788 (Neb. 1980) (federal employee). Nebraska has taken the position that even vested benefits are too difficult to value and are therefore not property subject to equitable division between spouses in divorce proceedings, although they are a factor to be considered in setting alimony to be paid to the wife. In contrast, Wisconsin has chosen to recognize that a pension is an asset and to face the valuation problems. *See Bloomer v. Bloomer*, 84 Wis. 2d 124, 267 N.W.2d 235 (1978). Most other states characterize at least vested pension rights as marital property. *See generally* Pattiz, *In a Divorce or Dissolution Who Gets the Pension Rights: Domestic Relations Law and Retirement Plans*, 5 Pepperdine L. Rev. 191 (1978); Annot. 94 A.L.R.3d 176, 241–242 (1979).

James argues that, should his federal pension be included, the value of Evelyn's social security and unvested pension benefits should also be considered. As previously mentioned, federal law preempts apportionment of social security benefits by state courts. With regard to Evelyn's unvested pension interests, however, James is correct. The record does not indicate whether this benefit has since vested; however, under Wisconsin law, unvested benefits are also considered in determining the value of the parties marital assets. *Leighton,* 81 Wis. 2d at 635–36, 261 N.W.2d at 464. The court must consider the value of Evelyn's pension rights on remand. We emphasize the wide discretion given to the trial court to choose the method of valuation and apportionment of these respective pension assets on remand. *Bloomer v. Bloomer,* 84 Wis. 2d 124, 134, 267 N.W.2d 235, 240 (1978) ; *Bouchard v. Bouchard,* 107 Wis. 2d 632, 321 N.W.2d 330 (Ct. App. 1982). The court may also consider the value of the pensions as a factor in awarding maintenance rather than as property to be divided.

We affirm that part of the judgment that grants divorce to both parties. We remand for further consideration of the property division in light of the value of the settlement proceeds at the time of the divorce and the values of the parties' pension rights.

*By the Court.*—Judgment and order affirmed in part, reversed in part, and cause remanded with directions. No costs to either party.